UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GREGG ALLMAN, JAIMOE f/k/a JOHNNY LEE
JOHNSON, AND BUTCH TRUCKS INDIVIDUALLY,
AS MEMBERS OF "THE ALLMAN BROTHERS
BAND" AND AS PARTNERS IN "THE ALLMAN
BROTHERS BAND RECORDING COMPANY";
RICK NIELSEN, BRAD CARLSON p/k/a "BUN E.
CARLOS", ROBIN ZANDER, AND TOM
PETERSSON, INDIVIDUALLY AND AS MEMBERS
OF "CHEAP TRICK;" ELMO SHROPSHIRE,
INDIVIDUALLY AND AS A MEMBER OF
"ELMO & PATSY;" ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY
SITUATED,

          MEMORANDUM DECISION
              AND ORDER

          06 CV 3252 (GBD)

                                 Plaintiffs,

        -against-

SONY BMG MUSIC ENTERTAINMENT,

                                Defendant.
------------------------------------------------------------------x
GEORGE B. DANIELS, District Judge:

      This breach of contract action is brought on behalf of a purported class of recording artists who claim that defendant, Sony BMG Music Entertainment, has failed to pay them the full royalty amount owing under their recording agreements. Defendant moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the amended complaint. The motion is granted.

      For purposes of a Fed.R.Civ.P. 12(b)(6) motion, the Court is to liberally construe the amended complaint, accepting the factual allegations as true, and drawing all reasonable inferences in plaintiffs' favor. Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 131 (2d Cir. 2007) (*quoting* Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). In addition to considering the factual allegations pled in the amended complaint, the Court may also consider documents attached to the complaint as exhibits and any documents incorporated by

reference therein. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). To survive a Rule 12(b)(6) motion, the factual allegations "must create the possibility of a right to relief that is more than speculative." Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008).

The recording contracts each provide that the interpretation and legal effect of the agreements are governed by New York law, and the parties have not argued otherwise. Under New York law, the interpretation of an unambiguous written contract presents a question of law for the Court to resolve without resort to extrinsic evidence. LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005) (*quoting* Postlewaite v. McGraw-Hill, Inc., 411 F.3d 63, 67 (2d Cir. 2005)); Beal Sav. Bank v. Sommer, 834 N.Y.S.2d 44, 47 (N.Y. 2007). A complete and unambiguous written contract should be enforced according to its terms by reading the document as a whole, and construing it so as to give full meaning and effect to the material provisions. Bailey v. Fish & Neave, 837 N.Y.S.2d 600, 603 (N.Y. 2007); Beal Sav. Bank, 834 N.Y.S.2d at 47.

Plaintiffs allege that they are entitled to royalties in the amount of fifty percent of the net licensing proceeds defendant obtains from sale of sound recordings by its licensees, music download services and ringtone providers, who distribute the recordings to purchasers via digital transmission. Plaintiffs' claim of entitlement is premised on the contractual language, which they identify as the "licensing provision," that states: "[i]n respect of any Master Recording[1]

---

[1] The recording agreements define the term "Master Recording" as "every recording of sound ... which is used or useful in the recording, production and/or manufacture of Phonograph Records."

leased by [defendant] to others for their distribution of Phonograph Records in the United States, [defendant] will pay you fifty percent (50%) of [defendant's] net receipts from its Licensee."[2] (Am. Compl. ¶¶ 36, 48). By its express terms, this provision pertains to the payment of fifty percent of net receipts when "any Master Recordings is leased ..." Plaintiffs have not pled any allegations that the master recordings were leased. There is, therefore, no basis from which it can reasonably be inferred that payment pursuant to the master recording lease provision is applicable.

In calculating royalties, defendant utilizes the royalty provisions applicable to "Sales of Phonograph Records ... consisting entirely of Master Recordings recorded under this agreement and sold by [defendant] or its Licensees Through Normal Retail Channels ..." "Phonograph Records" is contractually defined as "all forms of reproductions, now or hereafter known, manufactured or distributed primarily for home use ..." Plaintiffs acknowledge that digital music files, the form in which the subject recordings were distributed, fall within the definition of "phonograph records." Thus, the plain language of this royalty provision demonstrates its applicability to sales of sound recordings, by defendant's licensees through normal retail channels, including recordings that are distributed to consumers via transmission of digital music files. Plaintiffs do not argue otherwise.

Plaintiffs, however, stress that technological advances have rendered the agreed-upon royalty formula more advantageous to defendant. Advances in future technologies were clearly

---

[2] The reference to "Licensee" only appears in two of the three named plaintiffs' recording agreements. The comparable section in the Cheap Trick contract reads: "In respect of any Master Recording leased by [defendant] to others for their distribution of Phonograph Records in the United States, [defendant] will pay you 50% of [defendant's] net receipts therefrom ..." (Id. ¶ 42).

provided for in the agreements.[3] Thus, the emergence of a new era of digital sound recordings does not afford plaintiffs the right, under the guise of contract interpretation, to rewrite the terms of the contracts in order to secure a more favorable, or what they consider to be more equitable, royalty formula. See, Greenfield v. Philles Records, Inc., 750 N.Y.S.2d 565, 572 (N.Y. 2002).

Accordingly, the defendant's motion to dismiss is granted.

Dated: New York, New York
June 17, 2008

SO ORDERED:

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

---

[3] The parties' contracts specifically provide that they govern the distribution of plaintiffs' recordings via "all forms of reproduction, now or hereafter known." Such language "clearly anticipate[s] development of new technologies." Silvester v. Time Warner, Inc., 763 N.Y.S.2d 912, 917 (N.Y. Sup. Ct. 2003), aff'd 787 N.Y.S.2d 870 (N.Y. App. Div. 2005); see also, Reinhardt v. Wal-Mart Stores, Inc., - - F.Supp.2d - -, 2008 WL 1781232, at *5 (S.D.N.Y. Apr. 18, 2008) ("The phrase 'now or hereafter known,' when referring to forms of reproduction, reveals that future technologies are covered by the agreement." "[Plaintiff's] argu[ment] that the license refers only to 'all forms' that are 'manufactured or sold,' and digital downloads do not fall within its purview because they are transmitted and licensed to end users rather than manufactured * * * is without merit.").

4