UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELMO SHROPSHIRE, INDIVIDUALLY AND AS A MEMBER OF "ELMO & PATSY"; On Behalf Of Himself And All Others Similarly Situated<br><br>         Plaintiff,<br> -against-<br><br>SONY MUSIC ENTERTAINMENT, a Delaware General Partnership,<br><br>         Defendant. | 06 Civ. 3252 (GBD) (KNF)<br><br>**ECF CASE** |
| "THE YOUNGBLOODS" (Perry Miller p/k/a Jesse Colin Young; Lowell Levinger; Jerry Corbitt; Mina Bauer, the widow of Joe Bauer; and manager Stuart Kutchins), On Behalf Of Itself And All Others Similarly Situated,<br><br>         Plaintiff,<br> vs.<br><br>BMG MUSIC,<br><br>         Defendant. | 07 Civ. 2394 (GBD) (KNF)<br><br>**ECF CASE** |

### DECLARATION OF BRIAN CAPLAN IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS

**BRIAN CAPLAN** makes the following declaration, under penalty of perjury, pursuant to 28 U.S.C. § 1746:

    1.  I am member of Caplan & Ross LLP, co-counsel of record together with the law firms of Milberg LLP and Probstein, Weiner, and Butler for Plaintiff Elmo Shropshire in *Shropshire v. Sony Music Entertainment*, 06 Civ. 3252 (GBD) (KNF) (the "*SME Action*") and co-counsel of record together with the law firms of Milberg LLP and Law Offices of Thomas A.

Cohen for Plaintiff The Youngbloods in *Youngbloods v. BMG Music*, 07 Civ. 2394 (GBD) (KNF) (the "*BMG Action*"). I make this declaration in support of plaintiff's motion for preliminary approval of the proposed settlements with Defendant Sony Music Entertainment ("SME") and BMG Music ("BMG" now known as Arista Music ("Arista")).

    2.    I make this declaration based upon personal knowledge of the facts set forth herein and upon my review of the Court's docket and the papers filed in these actions. If called as a witness I could and would testify competently to these facts under oath.

    3.    The parties to the above captioned Actions, after extensive arm's length negotiations between all counsel, who are experienced and qualified in this type of complex litigation and the issues covered by the instant litigation, have reached proposed settlements of the Actions which are memorialized in each action in a Stipulation and Agreement of Settlement (the "Stipulations"), attached hereto as Exhibits 1 and 2, which each have the following attached exhibits:

> **Exhibit A**: Preliminary Order for Notice and Hearing In Connection With Settlement Proceedings
>
> **Exhibit A-1**: Notice of Pendency of Class Actions, Proposed Settlements of Class Actions, Motions for Attorneys' Fees and Expenses, and Settlement Hearings
>
> **Exhibit A-2**: Claim Form
>
> **Exhibit A-3**: Publication Notice
>
> **Exhibit B**: Order and Final Judgment

    4.    Attached hereto as Exhibit 3 is the resume of Caplan & Ross, LLP.

    5.    Attached hereto as Exhibit 4 is the resume of Milberg LLP.

6. Attached hereto as Exhibit 5 is the resume of Probstein, Weiner & Butler.

7. Attached hereto as Exhibit 6 is the resume of the Law Offices of Thomas A. Cohen.

8. Plaintiffs make this motion seeking entry of a proposed Preliminary Order for Notice and Hearing In Connection With Settlement Proceedings, in each of the actions in accordance with the terms of the Stipulations between and among Plaintiffs and Defendants SME and Arista.

9. Plaintiffs have aggressively litigated these class actions brought on behalf of classes of persons who entered into recording or production agreements with labels affiliated with, or subsidiaries of, SME and BMG. After engaging in discovery and vigorous, arms'-length negotiations with the assistance of mediator Eric Van Loon of JAMS, the parties reached an agreement regarding the settlement of the Actions, set forth initially in a Confidential Summary Term Sheet ("Term Sheet"), entered into and dated August 11, 2011, and then memorialized in the Stipulations attached hereto as Exhibits 1 and 2.

10. Before reaching the proposed settlements with defense counsel, Plaintiffs' Counsel conducted a thorough investigation of the underlying events and transactions as alleged in the complaints in the actions, including a review of documents produced by Defendants, interrogatory responses provided by Defendants, depositions, witness interviews, and confirmatory discovery provided by Defendants pursuant to the Term Sheet, and have researched the applicable law with respect to the claims alleged and the potential defenses thereto.

11. This declaration sets forth the history and scope of this litigation in order to demonstrate why the proposed Settlements of these Actions on the terms agreed to is fair, reasonable and adequate and preliminary approval should be granted. The facts recited

concerning the history of these Actions, Plaintiffs' claims, and the efforts of Co-Counsel in obtaining the Settlements are not, and are not intended to be, all inclusive, but are set forth to provide the Court with a brief but meaningful description of the history, scope, risks, and complexity of these Actions. We respectfully submit that they demonstrate that: (i) the proposed Settlements should be preliminarily approved; (ii) notice should be issued in accordance with the terms and provisions set forth at ¶¶ 10-13 of the Stipulations; and (iii) a final approval hearing should be scheduled for final determinations as to the fairness, reasonableness, and adequacy of the proposed Settlements and to consider Class Counsel's motions for attorneys' fees and expenses and service awards to the Plaintiffs Elmo Shropshire and The Youngbloods.

**Settlements**

12.  The proposed Settlements (1) make $7.95 million available to all Class Members based on their downloads sold on Apple's iTunes Store before December 31, 2010 ("Past Settlement Relief" or "Compensation For Prior Years") and (2) provide for a prospective 3% increase in the royalty rate for certain Class Members (as described below) for permanent digital downloads and ringtones sold in the U.S. after January 1, 2011 ("Prospective Settlement Relief").

13.  More specifically, Past Settlement Relief includes:

$7.65 million, less Plaintiffs' attorneys' fees and expenses as may be approved by the Court, for Class Members (1) who had at least 28,500 total downloads of recordings attributable to Class Contracts and sold in the United States by SME or BMG (n/k/a Arista) on Apple's iTunes Store from inception through December 31, 2010 and (2) who submit a valid Claim Form. These funds would be paid or credited, as applicable, *pro rata* to the royalty accounts of qualifying Class Members.

$300,000 cash, without any deduction of fees or expenses, which will be paid to all Class Members, regardless of their royalty account balance, for those Class Members (1) who had fewer than 28,500 total downloads of recordings attributable to Class Contracts and sold in the United States by SME or BMG (n/k/a Arista) on Apple's iTunes Store from inception through December 31, 2010

4

and (2) who submit a valid Claim Form. The cash would be paid equally *per capita* among qualifying Class Members.

The proposed settlement allocates the $7.65 million and $300,000 Past Settlement Relief amounts between the *SME Action* and the *BMG Action* based on the relative proportion of sales by SME to sales by BMG (n/k/a Arista) in the U.S. on Apple's iTunes Store through December 31, 2010.

Based on the respective sales data, 54.86% is attributed to the settlement with SME ($4,196,790 of the $7.65 million fund and $164,580 of the $300,000 fund) and 45.14% is attributed to the settlement with BMG (n/k/a Arista) ($3,453,210 of the $7.65 million fund and $135,420 of the $300,000 fund).

   14. Prospective Settlement Relief:

SME and Arista have agreed to modify the Class Contracts of Class Members who submit a valid Claim Form and who qualify for Prospective Settlement Relief to provide that SME and Arista will calculate royalties on Sales[1] in the United States of permanent digital downloads and ringtones of recordings attributable to Class Contracts under the royalty provisions that it currently applies to such Sales, and shall add an additional royalty equal to 3% of the gross amount paid or credited to SME or Arista with respect to each such U.S. permanent digital download or ringtone, with no deductions of any kind and no reserves held (the "Additional Royalty").

The Additional Royalty is available to Class Members with:

> (i) at least 28,500 total downloads of recordings attributable to Class Contracts and sold in the United States by SME or BMG (n/k/a Arista) on Apple's iTunes Store from inception through December 31, 2010 (such Additional Royalty to be applied to all Sales after January 1, 2011); or

> (ii) with fewer than 28,500 total downloads of recordings attributable to Class Contracts and sold in the United States by SME or BMG (n/k/a Arista) on Apple's iTunes Store from inception through December 31, 2010, but (x) who have at least $18,000 of royalty earnings attributable to Sales in the United States of any such recordings on Apple's iTunes Store within any two consecutive royalty accounting periods after January 1, 2011, and (y) who thereafter assert their right to such Additional Royalty within the period within which such Class Member, under the terms of the applicable Class Contract, may object to royalty accountings for the later

---

[1]  For purposes of these settlements, "Sales" means any distribution in the United States of permanent digital downloads or ringtones, whether by sale, license, or otherwise, excluding, for the avoidance of doubt, uses of sound recordings attributable to Class Contracts in motion pictures, television, advertising, or other uses for which SME or Arista currently accounts under such Class Contracts' Net Receipts Provisions.

of such two consecutive royalty accounting periods (provided that SME and Arista shall owe such Additional Royalty only commencing with the royalty period following such assertion of right).

Class Members with fewer than 28,500 total downloads of recordings attributable to Class Contracts and sold in the United States by SME or BMG (n/k/a Arista) on Apple's iTunes Store from inception through December 31, 2010 who do not have at least $18,000 of royalty earnings attributable to Sales in the United States of any such recordings on Apple's iTunes Store within any two consecutive royalty accounting periods after January 1, 2011 will not be eligible for the Additional Royalty.

15. The parties negotiated and agreed to a minimum download threshold (ultimately, at least 28,500 total downloads of recordings attributable to Class Contracts and sold in the United States by SME or BMG (n/k/a Arista) on Apple's iTunes Store from inception through December 31, 2010 within both the Prospective Settlement Relief and the Past Settlement Relief) based on Defendants' representation that without a minimum download threshold there would be a significant administrative burden to them in administering any prospective settlement relief.

16. During the settlement negotiations, Plaintiffs' Counsel were informed by Defendants and subsequently confirmed that there are several thousand artists who are potential class members and who have fewer than 28,500 iTunes downloads sold in the relevant period. Plaintiffs' Counsel were further informed by Defendants' Counsel that: (i) there are nearly one thousand such artists whose total iTunes sales in the period are less than $100; (ii) modifying royalty rate terms within the royalty system will be a labor-intensive, manual process—and this group is more likely to include artists whose royalty terms were initially established in legacy systems in which there was less flexibility in the royalty set-up, making changes even more complicated to implement; (iii) the costs of re-coding royalty rates for many of these artists would certainly exceed the value of the benefit that they would receive; and (iv) it is this

6

administrative cost, and the fact that in many instances it could exceed the value of any benefit to the artist, that made a threshold necessary for the Prospective Settlement Relief.

17.  To compensate Class Members who do not meet the minimum download threshold for Prospective Settlement Relief, the parties agreed to allocate the Past Settlement Relief available to those Class Members as cash payments without regard to a Class Member's royalty account balance (that is, they would be paid in cash, even if their royalty account balance were negative) and allocated on a *per capita* basis, so as to minimize the costs to Defendants of calculating an allocation to those below the minimum download threshold. The parties also agreed to a mechanism where if their future sales hit certain levels that alleviate the administrative burden, those Class Members would then become eligible for the Prospective Settlement Relief.

18.  After negotiating the substantive terms of the Settlements, Plaintiffs' Counsel retained an experienced royalty auditor, Gary Cohen, to conduct confirmatory discovery with respect to the methodologies used by Defendants in connection with the negotiations leading to the Settlements and the accuracy of the figures upon which the Settlements are based. Plaintiffs' Counsel are experienced in complex litigation such as this and now, following the completion of confirmatory discovery, believe that the proposed Past Settlement Relief and Prospective Settlement Relief is fair, reasonable and adequate, and the proposed allocations are fair and reasonable. Accordingly, Plaintiffs' Counsel believe that the Settlements are fair, reasonable and adequate, and the interests of the Classes are better served by the Settlements than by further litigation.

19.  The Actions have thus far proven highly complex, lengthy and expensive, and this would likely not have abated in the absence of the proposed Settlements. This litigation

involved complex issues relating to royalty accounting, contract interpretation, and class certification. Indeed, Plaintiffs' Counsel collectively have already expended thousands of hours of attorney (and other professional) time and tens of thousands of dollars in reasonable expenditures.

20.     Plaintiffs and Class Counsel believe that the breach of contract and declaratory judgment claims asserted in the Actions are meritorious and that the evidence developed to date supports the claims asserted, but they have considered and weighed the issues involved in establishing the validity of their claims as well as issues relating to the certification of a class and have concluded that, in light of the uncertainty of the outcome as well as the substantial risks and inevitable delay in proceeding to trial, compared to the benefits being provided hereby, the terms and conditions set forth herein are fair and reasonable and should be submitted to the Court for approval.

**SME Action Procedural History**

21.     On April 27, 2006, plaintiffs Gregg Allman, Jaimoe f/k/a Johnny Lee Johnson and Butch Trucks, individually, as members of "The Allman Brothers Band," and as partners in "The Allman Brothers Band Recording Company; and, Rick Nielsen, Brad Carlson p/k/a "Bun E. Carlos", Robin Zander, and Torn Petersson, individually, and as members of "Cheap Trick"; Elmo Shropshire, individually, and as a member of "Elmo & Patsy" filed the initial putative class action complaint against Sony BMG Music Entertainment in the U.S. District Court for the Southern District of New York (the "Court") asserting causes of action for breach of contract and declaratory judgment. [D.E. 1]. Specifically, plaintiffs allege that Defendant has failed to properly account and pay royalties on income received by Defendant from its third-party licensees for digital downloads (such as iTunes) and ringtones and Defendant

8

has knowingly and materially breached its contractual obligations to plaintiffs and the other members of the Class.

22.     On July 10, 2006, plaintiffs filed a First Amended Complaint alleging the same causes of action. [D.E. 4]. On September 11, 2006, SME moved to dismiss the Amended Complaint pursuant to FRCP 12(b)(6). [D.E. 10]. On June 17, 2008, the Court granted SME's Motion to Dismiss. [D.E. 29]. On June 24, 2008, the Clerk of the Court entered Judgment against Plaintiffs. [D.E. 30]. On June 30, 2008, plaintiffs filed a Motion for Reconsideration of the Court's Order granting SME's Motion to Dismiss, Relief from the Judgment and Leave to Amend. [D.E. 31]. On August 22, 2008, the Court signed a Stipulation and Order of Voluntary Dismissal with Prejudice of plaintiffs Rick Nielsen, Brad Carlson p/k/a "Bun E. Carlos", Robin Zander, and Torn Petersson, individually, and as members of "Cheap Trick". [D.E. 36]. On March 19, 2009 the Court entered an Order vacating the judgment of dismissal and granting plaintiffs an opportunity to file a Second Amended Complaint. [D.E. 37].

23.     On March 23, 2009, plaintiffs filed the Second Amended Complaint which asserted causes of action for breach of contract, declaratory judgment and otherwise clarified the pleadings. [D.E. 38]. On April 14, 2009, the Court signed a Stipulation and Order of Partial Dismissal with Prejudice dismissing the causes of action for declaratory judgment. [D.E. 40]. On April 20, 2009, SME filed its Answer to the Second Amended Complaint. [D.E. 41].

24.     On May 19, 2009, Magistrate Fox issued a pretrial order which *inter alia* bifurcated discovery such that merits discovery be completed before class certification discovery would commence. [D.E. 44].

25.     On April 16, 2010, plaintiffs filed the Third Amended Complaint adding the Allman Brothers Band Recording Company as a plaintiff. [D.E. 55]. On May 7, 2010, SME

9

filed its Answer to the Third Amended Complaint. [D.E. 58] On September 15, 2010, the Court signed a Stipulation and Order of Voluntary Dismissal with Prejudice of plaintiffs Allman Brothers Band Recording Company; Gregg Allman, Jaimoe f/k/a Johnny Lee Johnson and Butch Trucks, individually, as members of "The Allman Brothers Band," and as partners in "The Allman Brothers Band Recording Company". [D.E. 70].

26. On September 20, 2010, Plaintiff Elmo Shropshire filed a Motion for Partial Summary Judgment. [D.E. 72]. On January 14, 2011, SME filed a Motion for Summary Judgment. [D.E. 80]. Significant dispositive issues were raised by each party in their respective motions.

**BMG Action Procedural History**

27. On March 23, 2007, plaintiff The Youngbloods (Perry Miller p/k/a Jesse Colin Young; Lowell Levinger; Jerry Corbitt; Mina Bauer, the widow of Joe Bauer; and manager Stuart Kutchins) filed the initial putative class action complaint against Sony BMG Music Entertainment in the U.S. District Court for the Southern District of New York (the "Court") asserting causes of action for breach of contract, declaratory judgment and breach of covenant of good faith and fair dealing. [D.E. 1].

28. On April 19, 2007, The Youngbloods filed a First Amended Complaint alleging the same causes of action against BMG. [D.E. 5]. On June 25, 2007, BMG moved to dismiss the Amended Complaint pursuant to FRCP 12(b)(6). [D.E. 13]. On March 31, 2008, the Court ordered that the fifth cause of action for breach of covenant of good faith and fair dealing be dismissed, otherwise denied BMG's motion and granted Plaintiff leave to file an amended complaint. [D.E. 21].

29. On May 9, 2008, Plaintiff filed the Second Amended Complaint which asserted causes of action for breach of contract, declaratory judgment and otherwise clarified the

pleadings. [D.E. 27]. On May 30, 2008, BMG moved to dismiss the Second Amended Complaint pursuant to FRCP 12(b)(6). [D.E. 28]. On March 24, 2009, the Court denied BMG's motion to dismiss the Second Amended Complaint. [D.E. 33]. On April 20, 2009, BMG filed its answer to the Second Amended Complaint. [D.E. 36].

30. On May 19, 2009, Magistrate Fox issued a pretrial order which *inter alia* bifurcated discovery such that merits discovery be completed before class certification discovery would commence. [D.E. 40].

31. On August 31, 2010, BMG filed a Motion to Stay the Proceedings and for Leave to Amend its Answer. [D.E. 61]. On November 10, 2010, Magistrate Fox denied BMG's Motion to Stay the Proceedings and granted leave for BMG to file an amended answer. [D.E. 71]. On November 19, 2010, BMG filed its amended answer to the Second Amended Complaint. [D.E. 74].

32. On September 23, 2010, Plaintiff filed a Motion for Partial Summary Judgment. [D.E. 67].

**Settlement Negotiations**

33. During the pendency of these actions, Plaintiffs' Counsel engaged in extensive negotiations with Defendants prior to entering into the settlement agreements. Those negotiations included lengthy mediation briefs submitted by the parties to Eric Van Loon of JAMS. Subsequent to the filling of those briefs, on May 6, 2010 and May 21, 2010, the parties attended mediation sessions in New York conducted by Eric Van Loon of JAMS and subsequently participated in mediation sessions by teleconference with Mr. Van Loon on numerous additional occasions. On July 13, 2010 the Parties attended a settlement conference conducted by Magistrate Fox. In early March 2011, the parties attended a mediation session in New York conducted by Eric Van Loon of JAMS. On March 11, 2011 the parties submitted a

letter to Magistrate Fox advising the court that the parties had reached a settlement in principle and requesting an order adjourning all deadlines which was granted. The parties participated in further mediation sessions by teleconference with Mr. Van Loon on numerous occasions between March and August, 2011. On August 10 and 11, 2011, the Parties attended mediation sessions in New York conducted by Eric Van Loon of JAMS at which the parties agreed to a settlement term sheet.

34. The Settlements culminated from many months of extensive, intense settlement negotiations between the Plaintiffs and Defendants. These negotiations were conducted over a period of almost two years, and included, *inter alia*, several full-days mediation before Eric Van Loon and numerous teleconferences overseen by him and numerous conference calls between counsel for the parties directly.

35. These Settlements were achieved with the assistance of the named Plaintiffs in these Actions. There is absolutely no indication here of fraud or collusion. Discussions concerning the terms of the Settlement were conducted by senior lawyers for plaintiffs and defendants experienced in prosecuting and negotiating complex class actions such as this. For all of these reasons, counsel for Plaintiffs submit that the proposed Settlements are fair, reasonable and adequate, and the interests of the Classes are better served by the Settlements than by further litigation.

Dated: New York, New York
March 7, 2012

I declare under penalty of perjury that the foregoing is true and correct

_____
Brian Caplan